UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| MICHAEL FORMICA, | ) | |
| Plaintiff, | ) | Civil Action No. 7:14cv00449 |
| | ) | |
| v. | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| F.G. AYLOR, *et al.*, | ) | By:    Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

Plaintiff Michael Formica, a state prisoner proceeding *pro se*, has filed suit under 42

U.S.C. § 1983 alleging violations of his rights under the Eighth Amendment to the United States

Constitution. Defendants have filed a Motion for Summary Judgment, ECF No. 52, and Formica

has responded, ECF No. 60.[1] The motion is before me by referral under 28 U.S.C. §

636(b)(1)(B). ECF No. 48. Having considered the parties' pleadings, all supporting materials,

and the applicable law, I respectfully recommend that the presiding District Judge grant in part

and deny in part the Defendants' motion for summary judgment.

I. Facts and Procedural History

Formica began his incarceration at the Central Virginia Regional Jail ("CVRJ" or "Jail")

on January 25, 2012. The following day, the Jail's physician examined Formica, and the Jail

obtained Formica's medical records, including records of a hospitalization in November 2011 for

multi-organ dysfunction and heart failure. Pitts Aff. ¶ 4, ECF No. 53-1. Formica was given the

CVRJ Inmate Handbook, which provides in pertinent part:

---

[1] Formica also moved for an evidentiary hearing or oral argument. ECF No. 62. Through a
*Roseboro* notice, the Court notified Formica of his opportunity to file a brief and submit
evidence in response to the Defendants' Motion for Summary Judgment. ECF No. 54. Formica
has done so. ECF Nos. 60, 61; *see also* ECF No. 49. Formica has not identified a specific need
for a hearing, and the Court finds that the Motion for Summary Judgment can be resolved based
on the parties' filings. Accordingly, the motion for a hearing, ECF No. 62, is denied.

1

> Inmates with medical and/or dental problems which did not happen during
> confinement and which represent pre-existing conditions may be dealt with only
> in so far as these matters present a serious risk to life or health, as determined by
> the Jail Physician. Inmates will be required to be financially responsible for the
> outside treatment of pre-existing conditions. … Inmates will be charged a fee of
> $10.00 for a doctor's call, nurse's call or dental call … NO INMATE WILL
> EVER BE DENIED MEDICAL SERVICES DUE TO AN INABILITY TO PAY!
> However, indigent inmates will have their commissary accounts placed in a
> negative balance.
> …
> Inmates with dental problems of a non-emergency nature should submit a request
> to the Medical Department indicating the nature of the problem. Medical staff will
> evaluate the problem and if necessary have the Jail Dentist evaluate for further
> dental treatment. Generally extractions and temporary fillings are the dental
> services provided. Dentures, crowns, caps, root canals, permanent fillings, etc. are
> not provided by the Jail except where dental problems indicate a serious risk to
> the inmate's health. These services are the financial responsibility of the inmate.

ECF No. 53-3, at 4-5. By affidavit, Superintendent Glen Aylor explains that when a prisoner is

unable to afford the copayment for an in-house medical visit, he will have the visit and his

inmate account will be charged a negative balance. Aylor Aff. ¶ 2, ECF No. 53-44.

Superintendent Aylor further explains that inmates with a serious medical need will not be

denied care at an outside medical facility if they are unable to afford it. *Id.*

On January 29, 2012, Formica asked to see the Jail's dentist to have a tooth pulled. *Id.* ¶

3. The dentist examined tooth #27 and determined that it was malpositioned. The malpositioned

tooth was deemed a pre-existing condition that did not present a serious risk to Formica's health.

*Id.* at 5. Because of Formica's numerous other medical problems, the dentist determined that

extraction of tooth #27 would need to be performed by a specialist outside of the jail. *Id.* ¶ 3. The

Medical Supervisor at CVRJ, Amanda Pitts, L.P.N., advised Formica of the cost for extracting

tooth #27, and he declined the procedure, noting that he could not afford it. *Id.* ¶ 7.

2

A.      The Wisdom Tooth

On July 1, 2013, Formica notified the Jail's Medical Department that he had broken a tooth eating country-fried steak. *Id.* ¶ 9. At pill call that day, a nurse provided him Tylenol, and he was scheduled to see the dentist. Pitts Aff. ¶ 9; ECF No. 53-5, at 2. In a number of subsequent requests, Formica reported that this broken tooth caused pain and that his tongue was swollen and sore from rubbing against the rough edge of the tooth. ECF Nos. 1-2, at 1–2; 42-1, at 1. He also alleges that he told various officers, whom he does not identify, that he was in extreme pain. ECF Nos. 42-1, at 1; 60, at 2. On July 9, Formica asked to see the Jail doctor and requested a "real pain reliever." ECF No. 1-2, at 3. On July 12, the Jail dentist examined tooth #32 and took X-rays. Pitts Aff. ¶ 10; ECF No. 53-6, at 2. Formica again asked to be seen by the Jail's physician to address his pain. The dentist determined that tooth #32 had gross decay. He smoothed the rough edge of the tooth so that it would not irritate Formica's tongue and prescribed antibiotics and ibuprofen.[2] The dentist also indicated that Formica was "medically compromised" as he was taking blood thinners, and he noted, "Refer to oral surgeon for [extraction]." ECF No. 53-6, at 2.

In an affidavit attached to the Defendants' Motion for Summary Judgment, Nurse Pitts states that she understood the dentist's exam to have revealed that tooth #32 had gross decay, but was not broken. Pitts Aff. ¶ 11. She asserts that the tooth was not a serious medical need requiring extraction or further treatment. *Id.* Major Frank Dyer had the same understanding. Dyer Aff. ¶ 2, ECF No. 53-45. Neither Nurse Pitts nor Major Dyer consulted the Jail dentist or explained how they assessed the seriousness of Formica's tooth problem or the need for further

---

[2] Because Formica was taking a blood thinner, the prescription for ibuprofen was switched to Tramadol. ECF No. 53-6, at 2.

3

treatment. They report that their Affidavits are based on personal knowledge and review of the records. Pitts Aff. ¶ 1; Dyer Aff. ¶ 1.

On July 29, Formica questioned why he was required to pay for treating his tooth. ECF No. 53-7. After consulting Major Dyer, Nurse Pitts advised Formica that he would be examined again by the Jail dentist to determine whether his tooth problem was caused by gross decay or was broken at the Jail. ECF No. 53-8, at 2. At the follow-up visit on August 9, the Jail dentist assessed tooth decay, finding, the "tooth seemed to be compromised from cavities— [Formica] said nothing about tooth being broken while incarcerated." ECF No. 53-9. The dentist again prescribed antibiotics and ibuprofen and noted, "referral recommended." *Id.* Nurse Pitts says she interpreted these notes as indicating that Formica had no serious medical need and that referral to an oral surgeon was recommended only if Formica wanted the tooth extracted. Pitts Aff. ¶ 13. Again, Nurse Pitts does not indicate that she spoke to the Jail dentist about his findings or recommendation. A medical clerk at the Jail obtained an estimate from an outside oral surgeon for the dental work. Pitts Aff. ¶ 14. The day following his exam, Formica wrote a request, noting that he had received the estimate and asking for instructions about the procedure for his family to pay the outside dentist. Pitts Aff. ¶ 14; ECF No. 53-10. Nurse Pitts responded, on August 12, that the money needed to be deposited with the Jail, then it would be sent to the outside dentist at the time of the appointment. *Id.* Formica asserts that he did not have sufficient funds to pay for the outside dentist until his family deposited money in his inmate account on October 25. ECF No. 60, at 3.

On October 28, Formica asked to move forward with the referral and advised that his father, who would send money, would be out of the country in November. Pitts Aff. ¶ 15; ECF No. 53-11. The following day Formica authorized payment from his inmate account for X-rays

and a consultation at Central Virginia Oral and Facial Surgery ("Oral Surgeon"). *Id.* He also completed a patient information questionnaire for the Oral Surgeon on which he reported having numerous medical conditions, but indicated that he did not "have unhealed/recurrent injuries or inflamed areas, growths or sore spots in or around [his] mouth." ECF No. 53-12.

On November 15, Formica was transported to the Oral Surgeon for a consultation. Pitts Aff. ¶ 18; ECF No. 53-14. The Oral Surgeon examined Formica, took X-rays, and determined that tooth #17 had chronic periodontitis[3] and that half of a crown was missing from tooth # 32. He determined that both teeth should be extracted under general anesthesia. He did not prescribe any medications, but noted that on the day of surgery Formica should not take blood thinners. He provided an estimate of $1015.00 for the cost of the tooth extraction, ECF No. 53-14, at 8, which he scheduled for December 17, 2015. Pitts Aff. ¶ 20.

On November 23, Formica submitted a request form on which he acknowledged a portion of the cost of the extraction, noted that his father had plenty of money and would pay the bill, and complained about the delay of four months. ECF 53-17. On November 26, Formica requested two ibuprofen, and, because he was still taking blood thinners, he was given Tylenol. ECF No. 53-15.

Before he would extract the teeth, the Oral Surgeon required that Formica's PTINR, a test that measures the time it takes for someone's blood to clot, be 2 or lower. Pitts Aff. ¶ 19; ECF Nos. 53-16, 53-18. Jail medical staff checked Formica's PTINR on November 18 and December 12, and it was 2.9 and 2.5, respectively. Pitts Aff. ¶ 20; ECF No. 53-16, at 2. The Jail's

---

[3] "Periodontitis is a serious gum infection that damages the soft tissue and destroys the bone that supports your teeth. Periodontitis can cause tooth loss or worse, an increased risk of heart attack or stroke and other serious health problems. … Periodontitis is usually the result of poor oral hygiene." *Periodontitis*, Mayo Clinic (Feb. 4, 2014), http://www.mayoclinic.org/diseases-conditions/periodontitis/basics/definition/con-20021679.

physician's assistant prescribed a reduced amount of blood thinners. Pitts Aff. ¶ 20; ECF No. 53-16, at 3. At subsequent checks on December 14 Formica's PTINR was 2.5 and on December 16 it was 3.8. *Id.* As requested by the Oral Surgeon, the Jail's medical department withheld Formica's blood thinner the night before surgery, but his PTINR the following day was 4.2. *Id.*; ECF No. 53-18. The Oral Surgeon rescheduled the extraction for January 13, 2014, and Formica's blood thinners were further reduced. Pitts Aff. ¶ 22–23; ECF Nos. 53-16, at 3–4, 53-18, at 4. Formica's PTINR was monitored, and on the day of surgery it was 1.0. Pitts Aff. ¶ 23; ECF No. 53-19, at 2–3. The Oral Surgeon extracted teeth #17 and #32, and prescribed Tylenol for pain. *Id.* On January 16, Formica requested to be taken off the soft food diet. ECF No. 53-20.

B.      The Molar

On January 30, 2014, Formica complained that since his surgery he had experienced a sharp pain, which was getting worse, in "an area of his mouth … like a filling got knocked out." Pitts Aff. ¶ 24; ECF No. 53-21. He was scheduled to see the Jail dentist. The following day, Formica wrote another request, complaining that his tooth hurt when air touched it. *Id.* On February 7, the Jail dentist examined Formica, took X-rays, and noted that he complained of "some discomfort" in teeth #13 and #14 on the upper left. Pitts Aff. ¶ 25; ECF No. 53-22. He noted no significant findings. *Id.* Formica was charged a $10.00 copay. *Id.* Later that day Formica submitted another request, noting that the problem was in his upper right teeth and wondering how the dentist missed it when the other prisoners in his cell block could see the hole caused by the missing filling. Pitts Aff. ¶ 26; ECF No. 53-23. In response, Formica was asked whether he wanted to see the dentist again. *Id.* The following day, Formica complained about having to pay for a problem created by the Oral Surgeon, and on February 13, he asked for a re-evaluation, but protested having to pay another copayment. *Id.* The request was referred to the

6

Medical Department, and J. Lewis responded, "There is no refund after you have seen the dentist." *Id.* No follow-up appointment was scheduled.

On March 10, Formica submitted another request. He reported that the Jail dentist had overlooked the missing filling and hole in his tooth. He requested a temporary filling and noted that the tooth "really hurts now." The next day, Nurse Pitts responded that Formica had been scheduled to see the dentist. Pitts Aff. ¶ 28; ECF No 53-25. According to Nurse Pitts, Formica refused the March 21 dental appointment. Pitts Aff. ¶ 29; ECF No. 53-26. Formica claims that he was taken to see the dentist, but he refused to sign a form authorizing the copayment. Captain Deane then cancelled Formica's appointment before he saw the dentist. ECF Nos. 1-1, at 4; 35, at ¶ 14; 53-27, at 2; 60, at 5.

On May 25, Formica reported that his tooth had cracked, and he complained about being required to make the $10 copayment, which he had declined to pay, for the March 21 dental visit. Pitts Aff. ¶ 30; ECF No. 53-27. He indicated that he might file a lawsuit, and he requested to speak to Captain Graves about the issue. *Id.* The written response noted that Formica would have to talk to someone in the Medical Department and asked if he wanted an appointment scheduled. *Id.* Formica responded that he had seen the Jail dentist, who overlooked his problem, and he requested to see an outside dentist. Pitts Aff. ¶ 31; ECF No. 53-28. Formica was advised that he could not request to see an outside dentist; the Jail dentist would need to make a referral. *Id.* On May 31, Formica asked to see the Jail dentist, and an appointment was scheduled. Pitts Aff. ¶ 32; ECF No. 53-29. On June 13, the Jail dentist examined Formica, took X-rays, and found that he had a large cavity in tooth #5, which is on the upper left side of the jaw, with possible pulpal, or tissue, involvement. Pitts Aff. ¶ 33; ECF No. 53-30. The Jail dentist noted that Formica wanted

to save the tooth and that he asked to be referred to an outside dentist. *Id.* Although the Jail dentist prescribed antibiotics and ibuprofen, he did not mention other treatment. *Id.*

Nurse Pitts and other "Jail personnel," whom she does not identify, determined that Formica's tooth problem did not present a serious medical need that required treatment at an outside dental office, in part because he had been taken off blood thinners in March 2014. Nurse Pitts Aff. ¶¶ 27, 34. In written requests dated June 14, 18, and 22, Formica asked when his tooth problem would be taken care of and requested an appointment with an outside dentist. ECF No. 1-2, at 10–11. Nurse Pitts responded that Formica must have money in his inmate account to pay for a referral to an outside dentist before an appointment would be scheduled. *Id.*; Pitts Aff. ¶ 34. When Formica complained on June 24 about the copayments he had made and requested an estimate for an outside dentist, Nurse Pitts told him, "You are currently an inmate and need to follow jail policy. You cannot just [say] that you want to be seen by an outside dentist and we send you there." ECF No. 53-31, at 2. Nonetheless, later that day the Jail's Medical Department requested an estimate from Orange Family Dentistry. *Id.* at 3. That office was closed for vacation, but it responded on July 7 with an estimate of $350.00 to treat tooth #5. *Id.* at 4–5. On July 10, Formica requested a grievance form on his "broken tooth." *Id.* at 6. Nurse Pitts responded that he needed to pay $350.00 for the outside dentist. *Id.* The next day, Major Dyer informed Formica, "[Y]ou are responsible for any and all medical treatments." ECF No. 1-2, at 13; ECF No. 42-1, at 6.

On September 16, Formica asked that the Jail dentist examine his tooth for infection, and he expressed concern about bacteria from his tooth affecting his heart condition. Pitts Aff. ¶ 35; ECF No. 53-32. He was scheduled to see the Jail dentist. *Id.* On September 19, the Jail dentist examined Formica. He noted that tooth # 5 had gross decay and little clinical crown and that

8

Formica reported experiencing pain. The Jail dentist prescribed antibiotics and ibuprofen. Noting Formica's heart problem, the Jail dentist recommended referral to an oral surgeon for extraction of the tooth. *Id.* On September 22, Nurse Pitts sent a memo to Formica, reporting that he had been referred to an oral surgeon for the tooth extraction and that the estimated cost was $462. She directed him to "let medical know if you would like to move forward with scheduling this. As you are aware from past dental appointments you will need the money on you[r] inmate account before we can schedule this." ECF No. 49-1, at 4.[4]

Formica submitted requests on September 20, 21, 24, 25, 26, and 30 and October 1. ECF Nos. 21, at 2–5; 42-1, at 6–8. He expressed concern about possible infection in his tooth that could impact his heart condition. *Id.* He complained that he had not been scheduled to see an outside dentist and about the delay in treatment, and he requested to see an outside dentist. *Id.* Nurse Pitts responded that Formica "can write to the superintendent" and that all of his requests had already been answered. ECF No. 21, at 2–5. She also stated that the Jail doctor would assess Formica and determine whether his medical problems were "urgent." *Id.* at 3. There is no indication he saw the Jail doctor.

One month later, on October 17, Nurse Pitts asked the Jail dentist why he recommended that Formica be referred to an oral surgeon for extraction of tooth #5 rather than doing it himself. Pitts Aff. ¶ 37; ECF No. 53-34. The Jail dentist explained that he was concerned about Formica taking blood thinners, but after Nurse Pitts informed him that Formica had not taken them since March 2014, the Jail dentist agreed to perform the extraction. *Id.* He prescribed antibiotics and ibuprofen to prepare Formica for a tooth extraction at the next dental call. *Id.* On October 19, Formica refused to take the prescribed antibiotics and ibuprofen, explaining that his tooth had

---

[4] Pitts did not attach this memo to or mention it in her Affidavit.

9

already fallen out. Pitts Aff. ¶ 38; ECF No. 53-34. He declined to sign the refusal form because

he said he intended to file a lawsuit and thought signing the refusal would look bad. *Id.*; ECF No.

53-35.

On October 22, Formica complained about the remnants of his tooth, requested that the

problem be addressed, and protested making any more copayments until he was "out of pain."

ECF No. 53-36. Nurse Pitts advised him to take the prescribed medications if he wanted the Jail

dentist to extract his tooth. *Id.* Formica remained on the schedule to see the Jail dentist, ECF No.

53-34, who examined Formica on October 31. He noted that tooth #5 had no crown left,

recommended removing the remaining root, and prescribed ibuprofen and antibiotics. Pitts Aff. ¶

40; ECF No. 53-37. On November 14, the Jail dentist took X-rays, observed that the root of tooth

#5 was close to a nerve, and determined that the extraction would need to be performed by an

oral surgeon. Pitts Aff. ¶ 41; ECF No. 53-38.

On November 21, Nurse Pitts and Major Dyer met with the Jail dentist to discuss the

extraction of Formica's tooth and the reason for an outside referral. Pitts Aff. ¶ 42; Dyer Aff. ¶ 3.

Nurse Pitts wrote a memo to Superintendent Aylor, explaining the situation with Formica's

tooth. She reported that the Jail dentist thought the broken tooth was a preexisting condition and

did not present a life threatening emergency, but that an abscess could develop causing infection.

Pitts Aff. ¶ 42; ECF No. 53-39. Superintendent Aylor directed that Formica be referred to an

outside dentist and that the cost of the referral should be deducted from his account because the

broken tooth was a preexisting condition. *Id.*; Aylor Aff. ¶ 3.

Formica asserts that he submitted requests addressed to Nurse Pitts and Superintendent

Aylor on November 23, December 14, 15, 16, 17, 20, 22, and 29, and January 12 asking when he

would see the outside dentist. ECF No. 60, at 10–11. Formica reported on a request form that

money was "not an issue" and that he would pay the dentist once he was "out of pain." ECF No. 53-41.

An appointment with the Oral Surgeon was scheduled for January 15, 2015, and Formica's inmate account would be charged a negative balance for the cost of the referral. Pitts Aff. ¶ 43. The Oral Surgeon postponed the appointment for security concerns, however, after Formica's family member, impersonating someone from another doctor's office, called and discussed details of the appointment. Pitts Aff. ¶ 44; ECF No. 53-40. The Oral Surgeon examined Formica on January 22 and diagnosed a "retained abscessed root" for tooth #5. Pitts Aff. ¶ 46; ECF No. 53-42. He determined that extraction under general anesthesia was warranted. *Id.* Before Formica's scheduled tooth extraction on February 23, he was transferred from the CVRJ to the Virginia Department of Corrections ("VDOC"). Pitts Aff. ¶¶ 46–47.

Formica was seen by medical personnel in the VDOC on February 11, 2015, and tooth #5 was extracted on July 27, 2015. ECF No. 49-1, at 1-2.

C.    District Court Proceedings

On August 25, 2014, Formica filed a Complaint against Superintendent Aylor, Major Dyer, and Nurse Pitts for deliberate indifference to his serious medical needs. In response to Formica's Complaint, the Defendants filed a motion to dismiss, which Chief Judge Glen E. Conrad granted in part and denied in part. ECF Nos. 46, 47. Judge Conrad found that Formica had stated a plausible claim that his tooth conditions presented a serious medical need and that Defendants Aylor, Dyer, and Pitts delayed or denied the necessary surgeries, which the Jail dentist had recommended, based on Formica's inability to prepay the costs of those treatments. Formica had alleged sufficient facts to show that the delay in treatment prolonged his pain and allowed for the deterioration of his #5 tooth and potential complications of his heart issue. Thus,

11

the Court denied the motion to dismiss on "Formica's claims that defendants delayed or denied oral surgery care for serious medical needs based on his indigence." Judge Conrad granted the motion to dismiss as to Formica's claim that he had a right to avoid making copayments for dental visits and that the Jail's medical staff deprived him of a right by referring him to a dentist for his dental-related medical issues.

The Defendants now move for summary judgment, and Formica has responded in opposition. The Defendants argue that Formica's dental problems did not present a serious medical need requiring additional treatment. Building on this argument, they assert that Formica had to pay in advance for any dental treatment provided by an outside dentist. They assert that Formica's family had the ability to pay for such treatment. Formica contests these arguments.

## II. Standard of Review

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, --- U.S. ---, 134 S. Ct. 1861, 1866 (2014) (per curiam). Facts are material when they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists if "a reasonable jury could return a verdict in favor of the nonmoving party." *Kolon Indus., Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 173 (4th Cir. 2014) (citing *Anderson*, 477 U.S. at 248).

"The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Appalachian Power Co. v. Arthur*, 39 F. Supp. 3d 790, 796 (W.D. Va. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party makes that showing, the nonmoving party must then produce sufficient admissible evidence to establish a specific material fact genuinely in dispute. *See* Fed. R. Civ. P. 56(c)–(e); *Scott v. Harris*, 550

U.S. 372, 380 (2007). When deciding a summary judgment motion, the court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the nonmoving party's favor given the record as a whole. *See Tolan*, 134 S. Ct. at 1866; *Scott*, 550 U.S. at 380. The court does not weigh evidence, consider credibility, or resolve disputed issues—it decides only whether the record reveals a genuine dispute over material facts. *Tolan*, 134 S. Ct. at 1866.

### III. Discussion

Prisoners have a constitutional right to necessary medical care for serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citing *Estelle*, 429 U.S. at 104).[5] A deliberate-indifference claim has "two components, objective and subjective. Objectively, the inmate's medical condition must be 'serious'" in the sense that it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* "A medical condition need not be life threatening to be serious; rather, it could be a condition that would result in further significant injury or

---

[5] The Defendants assert that Formica was a convicted prisoner when the events giving rise to his medical claims occurred. Accordingly, they argue that the Eighth Amendment's cruel and usual punishment standard, rather than the Fourteenth Amendment's due process standard, applies. *See Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."); *Bell v. Wolfish*, 441 U.S. 520, 535–38 (1979). Formica does not contest this argument. "In any event, we need not resolve whether [Formica] was a pretrial detainee or a convicted prisoner because the standard in either case is the same—that is, whether a government official has been 'deliberately indifference to any [of his] serious medical needs.'" *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (quoting *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990)); *Dougherty v. Virginia*, No. 7:12cv549, 2013 WL 750140, at *5 n.8 (W.D. Va. Feb. 27, 2013) (citing *Hill v. Nicodemus*, 979 F.2d 987, 991–92 (4th Cir. 1992)) ("[A]s a practical matter, the contours of the Due Process Clause in the prison context tend to be coextensive with the substantive constitutional principles applied via the Eighth Amendment to convicted inmates.").

unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *accord Scott v. Clarke*, 64 F. Supp. 3d 813, 822 (W.D. Va. 2014). Subjectively, the prison official must have "actual . . . knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's [own] action or inaction." *Jackson*, 775 F.3d at 178 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The subjective component is an "exacting standard" that demands proof of intent beyond mere negligence, errors in judgment, inadvertent oversights, or disagreements about the prisoner's treatment plan. *Id.* A court must evaluate the reasonableness of an official's actions based on the risk that he or she actually knew of at the time. *Brown*, 240 F.3d at 390. A negligent failure to take additional precautions that, with hindsight, the official could have or should have taken does not negate the reasonableness of the response or show deliberate indifference. *Id.*

Formica presents two claims of deliberate indifference regarding his dental problems.[6] He claims that he cracked a wisdom tooth (tooth #32) while eating country fried steak and that a filling was knocked out of his molar (tooth #5) during oral surgery. He argues that necessary medical care was delayed or denied based on the Defendants' insistence that he pay for that care, which he was unable to afford. The Defendants argue that Formica had only tooth decay, which did not present a serious medical need or require treatment sooner than what was provided.

The seriousness of Formica's medical condition depends upon the nature of the decay or injury to the tooth as well as any related symptoms.

---

[6] In his brief in opposition to the motion for summary judgment, Formica mentions two "ancillary issues" from 2012 concerning his heart condition and a shoulder problem. ECF No. 60, at 15–17. It does not appear that Formica seeks to amend his complaint to add these claims, which, in any event, would be barred by the two year statute of limitations. *See Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991) (noting that "[t]here is no federal statute of limitations for § 1983 claims," and therefore Virginia's two-year statute of limitations for personal injury claims is controlling).

14

> Ordinarily, a tooth cavity is not a serious medical condition, but that is at least in part because a cavity is so easily treatable. Absent intense pain or other exigency, the treatment of a cavity (in or out of prison) can safely be delayed by the dentist's schedule or the patient's dread or neglect, can be subject to triage or the management of care, can be mitigated or repaired temporarily, and can be coordinated with other related conditions that need to be treated together. Nevertheless, a tooth cavity is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction. Consequently, because a tooth cavity will degenerate with increasingly serious implications if neglected over sufficient time, it presents a "serious medical need."

*Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000); *accord Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection.").

A.      The Wisdom Tooth

As to the first dental condition, six months elapsed between Formica's first visit with the Jail dentist about his wisdom tooth and the Oral Surgeon's extraction. Nurse Pitts interpreted the Jail dentist's instruction, "Refer to oral surgeon for [extraction]," as merely allowing the referral if Formica elected it. A natural reading of this instruction, however, suggests that the dentist recommended further treatment. A delay of four months is thus attributable to Nurse Pitts's determination that the extraction was an elective procedure for which Formica would have to pay before it would be scheduled. A delay of one month is attributable to Formica's elevated PTINR level, which was not the fault of any of the Defendants. Delay alone, however, does not establish deliberate indifference absent substantial "resultant harm or a worsened condition." *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008) (per curiam); *accord Muhammad v. Tatro*, No. 7:12cv43, 2013 WL 375472, at *2 (W.D. Va. Jan. 30, 2013), *aff'd*, 521 F. App'x 308 (4th Cir. 2013); *Wilson v. Coleman*, No. 7:09cv325, 2009 WL 3055268, at *4 (W.D. Va. Sept. 24, 2009) (citing *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995), and *Patterson v. Pearson*, 19

15

F.3d 439, 440 (8th Cir. 1994)) ("Delay in dental treatment for a known condition that presents a serious health risk can become a constitutional violation, depending on the circumstances.").

Regardless of the reason for the delay, Formica simply has not shown that it caused additional significant harm. Formica was examined by the Jail dentist within two weeks of his complaint. At the first evaluation, the Jail dentist noted that Formica's wisdom tooth was grossly decayed and would need to be extracted. Although Formica now claims that the sharp edge of his tooth cut his tongue causing excruciating pain, ECF No. 60, at 2, 12, no contemporary evidence supports the severity of his claim. Moreover, the Jail dentist promptly addressed Formica's tongue irritation by smoothing the rough edges of his tooth. After this procedure, Formica reported no other complications, such as his earlier claim of small lacerations to his tongue. Over the ensuing months, Formica did report experiencing some pain, but his complaints were limited. He was given Tramadol or Tylenol at various times when he requested it from the Medical Department and when he saw the Jail dentist. In preparation for the Oral Surgeon's examination, Formica did not report having any unhealed or inflamed areas or sore spots in his mouth. During the consultation in November, the Oral Surgeon did not indicate that Formica complained of pain, and he did not prescribe any pain medication. Moreover, the Jail dentist's initial assessment, and the Oral Surgeon's diagnosis and treatment plan given four months later, were virtually the same for the wisdom tooth. Formica certainly has provided evidence that he experienced some pain and discomfort, but there is no evidence of "frequent complaints of severe pain" or other substantial harm. *See Webb*, 281 F. App'x at 167. Although Formica contends that the root of his tooth was exposed and the possibility of a "blood stream infection" existed, ECF No. 60, at 12–13, he cites no evidence supporting the existence of these contentions. Accordingly, Formica has not shown that his wisdom tooth presented a serious

16

medical need or that the delay in treatment amounted to deliberate indifference. *See Muhammad*, 2013 WL 375472, at *2–3 (finding that broken tooth was not a serious medical need and five-month delay in extracting tooth did not show deliberate indifference where prisoner made no complaints of pain). The Defendants are entitled to summary judgment on this claim.

B.     The Molar

As to the second dental condition, Formica reported on January 30, 2014, that a filling fell out of one of his molars. When he was examined in June, the Jail dentist noted a large cavity with possible tissue involvement. By September the problem had progressed, and the Jail dentist found gross decay with little crown left. He recommended extraction. The following month, Formica reported that the tooth cracked and then the entire crown was broken off. From January to October, Formica's molar degenerated from a relatively minor lost filling to the entire crown breaking off, leaving only the root. A degenerative condition that causes the crown of a tooth to break off at the root constitutes a serious medical need. *See Berry*, 604 F.3d at 440; *Harrison*, 219 F.3d at 137. As Formica has satisfied the objective prong, the analysis shifts to the Defendants' subjective knowledge of the risk posed by their action or inaction.

1.     Nurse Pitts

Nurse Pitts was personally involved in responding to Formica's requests, scheduling dental appointments, and assessing his need for further care, although she did not examine him. Nurse Pitts is also the Medical Supervisor at the CVRJ. The same day that the Jail dentist examined him on February 7, Formica informed the Medical Department that the dentist had missed the problem with his tooth.[7] Although Formica requested a re-evaluation, one was not

---

[7] Formica has not named the dentist as a defendant, and, in any event, allegations of negligence do not amount to deliberate indifference. *Sosebee v. Murphy*, 797 F.2d 179, 181 (4th Cir. 1986) (quoting *Estelle*, 429 U.S. at 106) ("'[A] complaint that a physician has been negligent in

17

scheduled, and Nurse Pitts has not explained this omission. *See Cooper v. Dyke*, 814 F.2d 941, 945 (4th Cir. 1987) ("[G]overnment officials who ignore indications that a prisoner's or pretrial detainee's initial medical treatment was inadequate can be liable for deliberate indifference to medical needs."). After complaining in March that his "tooth really hurts now," ECF No. 53-25, Formica was scheduled to see the Jail dentist. That appointment was canceled by Captain Deane when, according to Formica, he refused to agree to the copay.

Prison officials may charge a prisoner for the cost of providing him medical care. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) (citing *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997)). Necessary medical treatment may not be withheld, however, based on a prisoner's inability to pay for the treatment. *Morris v. Livingston*, 739 F.3d 740, 748 (5th Cir. 2014); *Cheruk v. Southwest Reg'l Jail Auth. "Medical"*, No. 7:09cv257, 2009 WL 2596536, at *4 (W.D. Va. Aug. 20, 2009). Formica's challenge to the copay presents the situation of a prisoner who was unwilling, rather than unable to make a $10 copay for dental care. Even so, "the provision of necessary care may not be conditioned on the inmate's ability *or willingness* to pay." *Thomas v. Allen*, Civ. No. 14-10752, 2015 U.S. Dist. LEXIS 33699, at *15 (E.D. Mich. Feb. 12, 2015) (emphasis added). Thus, where prison officials elect to charge a copay, they may not withhold necessary medical care based on a prisoner's objection to the copay. *Id.* at *16. In that circumstance, the officials may charge the prisoner's account over his objection, but they may not refuse to provide medical treatment.

Formica has not named Captain Deane as a Defendant in this lawsuit, and he has not alleged that any named Defendant was directly involved in cancelling this dental appointment.

diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the *Eighth Amendment*. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'").

18

Captain Deane's actions appear to contradict the policy stated in the CVRJ Inmate Handbook. It indicates that a prisoner will not be denied treatment if he is unable to make a copay; instead his account will be placed in a negative balance. ECF No. 53-3, at 5. Furthermore, the policy does not expressly require a prisoner to agree to the copay before receiving medical care. *See* Aylor Aff. ¶ 2 ("Care through this dental program would never be refused to an inmate."). Although Captain Deane may have acted contrary to Jail policy, it is reasonable to infer that Nurse Pitts, as supervisor of the Medical Department, was aware that the appointment was canceled and the reasons for it. She does not say otherwise in her Affidavit. Despite Captain Deane's seemingly improper cancellation of the dental appointment, neither Nurse Pitts nor anyone else in the Medical Department rescheduled it.

Formica was next seen by the Jail dentist in June. He diagnosed a large cavity with possible tissue involvement, prescribed pain medication and antibiotics, and noted that Formica wanted to save the tooth and had requested referral to an outside dentist. Because Formica ruled out tooth extraction, the only other option available at the Jail, according to the CVRJ Inmate Handbook, was a temporary filling. Although Nurse Pitts notes that the Jail dentist did not recommend further treatment, she still obtained an estimate from an outside dentist for treatment of the tooth. She required Formica to have the money in his account before she would schedule the dental appointment.

The Defendants insist that Formica was capable of paying for his dental treatment. Formica claims that he is indigent, although his family was capable of paying, and did ultimately pay, for his dental work. This dispute about Formica's financial situation does not, however, change the fact that Nurse Pitts refused to schedule dental treatment, which Formica himself could not afford, until his family deposited sufficient funds into his inmate account. Nurse Pitts

19

does not explain why she chose not to schedule an appointment with an outside dentist and charge a negative balance on Formica's account. This procedure is sanctioned by the CVRJ Inmate Handbook and is the approach that Superintendent Aylor ultimately approved when he was consulted in November.

In deciding that Formica must pay before he would be scheduled to see an outside dentist, Nurse Pitts determined that Formica's tooth problem was not a serious medical need. Nurse Pitts is medically trained, but she does not claim to have any specialized dental training. Furthermore, she neither examined Formica nor consulted the Jail dentist until October 2014. Of course, "malpractice committed by mischaracterizing an emergency surgical procedure as an elective one will not contravene the Eighth Amendment." *Webb*, 281 F. App'x at 166; *accord Harrison*, 219 F.3d at 139 (noting that medical malpractice, including "a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless," does not violate the Eighth Amendment). As previously discussed, Formica's dental condition presented a serious medical need under the Eighth Amendment. Nurse Pitts's assessment to the contrary may amount to nothing more than negligence or an error in judgment, neither of which would show deliberate indifference. *See id.* Nonetheless, considering that Nurse Pitts has not claimed any special dental training, did not examine Formica, and did not consult with the treating Jail dentist, disputed facts exist about whether her decision was just an error in judgment. Furthermore, while some delay in treating a cavity may be reasonable, withholding treatment, unless the prisoner will pay the entire cost for it, is not. See Morris, 739 F.3d at 748.

Three months later, in September, the Jail dentist examined Formica and determined that his molar was grossly decayed and had little of the crown remaining. He recommended extraction by an oral surgeon. Formica claimed that bacteria from his tooth could affect his heart

condition, but no medical personnel echoed his concerns. The medical records and the Defendants' affidavits do not address what effect, if any, bacteria from Formica's tooth could have on his heart condition, or whether they assessed the risk identified by Formica. Nurse Pitts maintained that Formica's dental condition still was not a serious medical need and again insisted that he pay for the referral to an outside dentist before it would be made. This position effectively foreclosed the treatment recommended by the Jail dentist—that is unless Formica paid for the treatment. Another month passed with no action to treat the tooth decay.

In October, Nurse Pitts asked the Jail dentist to consider extracting Formica's tooth, rather than referring the procedure to an oral surgeon. He agreed, but days later Formica informed the Medical Department that the crown had broken off at the root. A month later, when the Jail dentist evaluated the root, he determined that it was too close to a nerve and would require extraction by an oral surgeon. On November 21, Nurse Pitts, after speaking with the Jail dentist, advised Superintendent Aylor that the broken tooth could result in infection, but was not a "life threatening emergency." Superintendent Aylor directed that Formica be scheduled with an outside oral surgeon and his inmate account debited. The appointment was scheduled for January 15. Nurse Pitts has not explained the reason for the two-month delay from the date of the Jail dentist's last examination to the appointment with an oral surgeon, other than to report an additional one week delay for security reasons. Formica was transferred to VDOC custody, and the tooth was not extracted until many months later.

Over the course of one year, Formica's tooth deteriorated from having a missing filling to breaking off at the root. His dental care over this period consisted of being misdiagnosed and then not scheduled for a re-evaluation despite his request; cancelation of a dental visit because he disputed the copayment; two dental visits showing first a large cavity, then gross decay and little

clinical crown that resulted in the Jail dentist recommending extraction; refusal to schedule the extraction unless Formica paid for the procedure in advance; and an aborted attempt to extract the tooth at the Jail followed by a two month delay in scheduling Formica to see an outside oral surgeon. Nurse Pitts was either directly involved in, or a reasonable inference can be drawn that she had knowledge of and tacitly approved, these events. Furthermore, the delay in treatment resulted in a worsened condition and significant harm. "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Under these circumstances, a delay of one year in treating a progressively degenerating tooth condition that could have been resolved relatively simply was intolerable. Accordingly, material disputes of facts about whether Nurse Pitts was deliberately indifferent to Formica's serious medical need preclude summary judgment.

      2.    Superintendent Aylor

Regarding the claims against Superintendent Aylor, the evidence shows that when he was apprised of Formica's tooth problem, he directed that Formica be scheduled to see an oral surgeon and his inmate account debited. As a supervisory, non-medical Defendant, he could "rely on the opinion of the medical staff as to the proper course of an inmate's treatment," and he cannot be held liable under the deliberate-indifference standard unless he was "personally involved with a denial of treatment or deliberately interfered with the medical staff's treatment." *See Reid v. Newton*, No. 3:13cv572, 2014 WL 1493569, at *14–15 (E.D. Va. Apr. 14, 2014) (citing *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990), *abrogated on other grounds by Farmer*, 511 U.S. 825 (1994)). Formica has not shown that Superintendent Aylor interfered with or denied his dental treatment. Rather, the evidence shows that Superintendent Aylor instructed that

Formica be treated by the outside oral surgeon, regardless of his present ability to pay for the treatment. Accordingly, Superintendent Aylor is entitled to summary judgment.

3.      Major Dyer

Like Superintendent Aylor, Major Dyer may rely on the treatment decisions of medical staff, and as long as he did not become personally involved with the denial of treatment, interfere with treatment, or tacitly approve or be indifferent to a physician's misconduct, he cannot be found deliberately indifferent. *See Miltier*, 896 F.2d at 854. Major Dyer, however, was personally involved to some degree in denying Formica's access to dental treatment. In July 2014, Formica submitted a request form in which he complained of being in pain and protested having to pay for outside dental care before he would be treated. Major Dyer responded that Formica was "responsible for any and all medical treatments." ECF No. 1-2, at 13. He does not claim to have consulted the Jail dentist or other medical personnel at that time. Thus, a factual dispute exists about Major Dyer's personal involvement in the decision to condition Formica's referral to an outside dentist on his advanced payment for that referral. As explained above, denying treatment of a serious medical need until the prisoner can pay for it amounts to deliberate indifference. Accordingly, Major Dyer is not entitled to summary judgment.

C.      Qualified Immunity

The Defendants argue that they are entitled to qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity analysis requires the court to assess two factors, in either sequence. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). First, the court asks, "[t]aken in the light most favorable

23

to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Merchant v. Bauer*, 677 F.3d 656, 662 (4th Cir. 2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). Second, the court must "consider whether the constitutional right violated 'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Id.* (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)).

As to the first prong, I have found that Nurse Pitts's and Major Dyer's conduct regarding Formica's molar condition violated the Eighth Amendment. Turning to the second prong, the right of a prisoner to adequate, reasonably prompt, medical care was clearly established at the time of the violation. *See Estelle*, 429 U.S. at 104; *Berry*, 604 F.3d at 440; *Wilson*, 2009 WL 3055268, at *4. Also clearly established was the principle that the right to necessary medical care may not be withheld based on a prisoner's inability to pay for it. *See Morris*, 739 F.3d at 748; *Cheruk*, 2009 WL 2596536, at *4.

Moving beyond the broad contours of this right, the Court also finds that the right was clearly established under the specific facts of this case. Here, Nurse Pitts and Major Dyer denied, or at least delayed for months, treatment of a progressively degenerating dental condition until Formica obtained money to pay for that treatment. Courts in analogous cases of delayed dental treatment for serious medical needs have declined to grant qualified immunity on summary judgment.

For example, in *Weeks v. Hodges*, 871 F. Supp. 2d 811 (N.D. Ind. 2012), a prisoner complained of pain from his wisdom teeth pressing together. The jail dentist prescribed antibiotics and recommended extraction of one tooth by an outside oral surgeon. Jail officials spoke to the prisoner's mother about paying for the extraction. When she determined that she

24

could not pay for the treatment, she asked the jail to pay for the extraction. Meanwhile, her son continued to complain of pain. Although he was seen by the jail dentist again and was provided pain medication, defendant jail officials did not reschedule the extraction. Four months after initially complaining of tooth pain, the prisoner was transferred to another facility and the tooth was extracted. The prisoner brought a claim for deliberate indifference against the jail officials who did not schedule his oral surgery. The district court found that jail officials had violated the prisoner's rights by failing to follow the jail dentist's instructions to refer the prisoner to the oral surgeon and conditioning that treatment on his ability to pay. *Id.* at 821–24. Addressing the defendants' assertion of qualified immunity, the court surveyed decisions from the Seventh Circuit, other courts of appeals, and other district courts and found a clearly established right to adequate medical care, which could not be conditioned upon an ability to pay. *Id*. at 828. Thus, the defendants "should have been on notice that it would be unconstitutional to deny plaintiff adequate dental care or condition the receipt of adequate dental care on the plaintiff's ability to pay." *Id.*; *see also Harrison*, 219 F.3d at 138–40 (reversing award of qualified immunity on summary judgment where prisoner was denied treatment for a painful cavity until he agreed to extraction of another tooth that the dentist deemed a more serious medical problem); *Boyd*, 47 F.3d at 969 (denying qualified immunity where dentist knew of painful, infected tooth condition and delayed for three weeks referring the prisoner for treatment). Accordingly, the court rejected the claim of qualified immunity.

The district court's analysis in *Weeks* is persuasive and applicable to the facts as presented on summary judgment in Formica's case. Accordingly, Defendants Pitts and Dyer are not entitled to qualified immunity.

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge

grant in part and deny in part the Defendants' Motion for Summary Judgment. ECF No. 52.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within

14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is

directed to transmit the record in this matter to the Honorable Glen E. Conrad, Chief United

States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel

of record and unrepresented parties.

ENTERED: February 12, 2016

Joel C. Hoppe
United States Magistrate Judge

26