CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 26 2016

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL FORMICA, | ) | CASE NO. 7:14CV00449 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| F. G. AYLOR, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Plaintiff Michael Formica, proceeding pro se, brought this prisoner civil rights action against officials at the Central Virginia Regional Jail ("the jail") under 42 U.S.C. § 1983. Formica alleges that jail officials delayed adequate dental treatment on two occasions based on Formica's inability to prepay the costs, in violation of his rights under the Eighth Amendment. Claim 1 alleged a six-month delay in arranging for extraction of a broken wisdom tooth, and Claim 2 alleged a one-year delay in repairing a tooth with a dislodged filling that led to loss of the tooth and an abscessed root. The court denied defendants' motion to dismiss, and they filed a motion for summary judgment, supported by declarations and medical records. Formica responded.

The matter is presently before the court on the report and recommendation ("the report") of United States Magistrate Judge Joel C. Hoppe. See 28 U.S.C. § 636(b)(1). The report recommends granting defendants' motion as to all claims against Defendant Aylor; granting the motion as to Claim 1 against Defendants Dyer and Pitts, but denying the motion as to Claim 2 against these two defendants. Formica, Dyer, and Pitts and have filed objections to the report.

The magistrate judge makes only a recommendation to this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making "a de novo determination of

those portions of the report or specified proposed findings or recommendations to which objection is made." § 636(b)(1). After de novo review of the portions of the report to which the parties object and pertinent portions of the record, the court concludes that the defendants are entitled to summary judgment.

I.

As a preliminary matter, Formica has filed a "motion to preserve objections" to the magistrate judges' denial of his motions for evidentiary hearing and appointment of counsel. Formica has also renewed his motion for appointment of counsel. The court concludes that Formica's objections must be overruled, and his renewed motion for counsel must be denied.

Contrary to Formica's assertions, "a § 1983 litigant has no right to appointed counsel . . . ." McMillian v. Wake Cnty. Sheriff's Dep't, 399 F. App'x 824, 829 (4th Cir. 2010) (citing Bowman v. White, 388 F.2d 756, 761 (4th Cir. 1968)). The statute governing in forma pauperis cases, 28 U.S.C. § 1915(e)(1), simply does not authorize the court to "appoint" counsel to represent an indigent party in a civil lawsuit; rather, court "may request" an attorney to represent any person unable to afford counsel. See also Mallard v. U.S. District Court for the Southern District of Iowa, 490 U.S. 296, 300-02 (1989) (finding under prior version of § 1915 that authority to "request" counsel to represent indigent civil litigant did not "authorize mandatory appointments of counsel"). Accordingly, the court asks attorneys for such assistance only in exceptional circumstances—when "a pro se litigant has a colorable claim but lacks the capacity to present it." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984); Miller v. Simmons, 814 F2d 962, 966 (4th Cir. 1987) ("Under [former version of § 1915(e)(1)], a plaintiff does not have an absolute right to appointment of counsel. In the district court a plaintiff must show that his case is one with exceptional circumstances.") (footnotes omitted).

2

Formica does not present exceptional circumstances warranting court-obtained assistance of counsel. His stated reasons for counsel are "the Court has found merit in this case" by denying the motion to dismiss, he cannot afford counsel, the issues are complex, he has "limited knowledge of the law" [and] limited access to a law library (2 hours a day 5 days a week)," and he "needs to depose or serve interrogatories and procure medical records," but cannot do so because of his incarceration. Formica's pleadings, however, demonstrate his ability to gather and present the facts of his case, to understand and respond to the legal issues raised in the defendants' briefs, and to read and understand the Federal Rules of Civil Procedure that govern this litigation. The issues in this case are not complex, and defendants attached Formica's dental records to their motion. Moreover, Formica offers no viable reason that incarceration prevented him from serving interrogatories or requests for production in a timely manner before Judge Hoppe filed his report. See Fed. R. Civ. P. 33 and 34. For these reasons, the court cannot find that procurement of counsel under § 1915(e)(1) is warranted in this case, or that the earlier denial of counsel was in error.

The court also concludes that Formica has failed to state any right to an evidentiary hearing before the court addresses the motion for summary judgment. For the reasons stated, the court will overrule Formica's objections to denial of his motions for appointment of counsel and evidentiary hearing. Similarly, the court will deny Formica's pending motions for counsel (ECF Nos. 65 and 66) and his motion to preserve objections (ECF No. 73).

Dyer and Pitts filed objections to particular findings in the report. Formica responded to the report by filing a pleading titled "objection to report and recommendation"[1] and a "declaration in opposition to defendants' objection to report and recommendation." Rather than

---

[1] For docket clarification, Formica filed two motions for appointment of counsel (ECF Nos. 65 and 66), identical to each other, and three identical copies of his objection document (ECF Nos. 68, 69, 70).

3

stating particularized objections to specific portions of the report, Formica largely repeats the factual allegations and legal conclusions he presented in his response to defendants' motion for summary judgment and objects, generally, to the recommendation for summary judgment for defendants as to some claims. In light of parties' objections, however, the court has reviewed, <u>de novo</u> in accordance with § 636(b)(1), the 40-page report and pertinent portions of the record.

## II. The Evidence

At the time his § 1983 claims arose between July 2013 and January 2015, Formica, was incarcerated at the Central Virginia Regional Jail ("the jail").[2] Aylor was superintendent of the jail, Dyer served as a major, and Pitts, a licensed practice nurse, served as the medical supervisor. The magistrate judge's report provides an extensive summary of Formica's dental complaints and course of treatment at the jail, based on Pitts' declaration describing the content of the jail's medical records of Formica's course of treatment at the jail. Neither of the parties has filed any particularized objection to this factual summary, and therefore, the court will adopt this portion of the report as an accurate portrayal of events as reflected in Formica's medical and dental records at the jail.

### A. Tooth #32

In February 2012, shortly after his incarceration at the jail, Formica saw the jail dentist on a complaint that tooth #27 was malpositioned. The dentist noted that the problem was a preexisting condition posing no serious risk to Formica's life or health. Because Formica had many other medical problems, the dentist stated that any extraction should be performed by an outside specialist.

---

[2] Defendants assert that Formica was a convicted prisoner when the events giving rise to his medical claims occurred, and Formica does not contest this fact. In addition, state court records available online indicate that Formica faced numerous charges in Greene County Circuit Court in 2012; that he was convicted on at least one of those charges in October 2012, and sentenced to twelve months in jail; and that he was later convicted and sentenced on other charges in 2013.

4

Jail policy provided:

> Inmates with medical and/or dental problems . . . which represent pre-existing conditions may be dealt with only in so far as these matters present a serious risk to life or health, as determined by the Jail Physician. Inmates will be required to be financially responsible for the outside treatment of pre-existing conditions. . . . inmates will be charged a fee of $10.00 for a doctor's call, nurse's call or dental call. . . NO INMATE WILL EVER BE DENIED MEDICAL SERVICES DUE TO AN INABILITY TO PAY! However, indigent inmates will have their commissary accounts placed in a negative balance.
>
> . . . .
>
> Inmates with dental problems of a non-emergency nature should submit a request to the medical Department indicating the nature of the problem. Medical staff will evaluate the problem and if necessary have the Jail Dentist evaluate for further dental treatment. Generally extractions and temporary fillings are the dental services provided. Dentures, crowns, caps, root canals, permanent fillings, etc. are not provided by the jail except where dental problems indicate a serious risk to the inmate's health. These services are the financial responsibility of the inmate.

(ECF No. 53-3, at 4-5.) Advised of the cost he would have to prepay to have tooth #27 extracted by an outside specialist, Formica declined the procedure.

On July 1, 2013, Formica notified the jail's medical department ("medical") that he had broken a tooth. He received Tylenol and was scheduled to see the jail dentist. Formica filed additional requests complaining that the broken tooth hurt and painfully rubbed against his tongue. He also alleges telling officers, other than the defendants, that he was in extreme pain. On July 8, 2013, he filed a request to see the doctor about discontinuing his blood thinner medication so his tooth could be extracted and about getting a "real pain reliever"; the written response was: "You will see the dentist. That is who handles (teeth)." (ECF No. 1-2, at 3.)

The jail dentist examined Formica on July 12, 2013, and diagnosed an existing condition of gross decay in tooth #32 (a wisdom tooth on the lower right).[3] He smoothed the tooth's rough edge so it no longer irritated the tongue, prescribed antibiotics and ibuprofen, and reported that Formica wanted to see the jail doctor for pain relief. The dentist also observed that Formica was

---

[3] (See Pitts Decl. Ex. PP, ECF No. 53-43.)

medically compromised because he was taking blood thinners and noted, "Refer to oral surgeon for [extraction]." (ECF No. 53-6, at 2.) Because Formica was taking a blood thinner, the jail medical staff provided him Tramadol instead of ibuprofen.

Pitts and Dyer state that they understood the dentist's notes to indicate that tooth #32 was grossly decayed, but not broken at the jail. They also state that, without consulting the dentist personally, they understood his notes as indicating that tooth #32 posed no serious risk to Formica's health requiring further treatment or extraction. Formica asked on July 29, 2013, why he was required to pay for treating tooth #32. Pitts, at Dyer's behest, scheduled Formica to see the dentist to determine whether his tooth was broken at the jail or merely deteriorated by decay. At the dental exam on August 9, 2013, the dentist reported that Formica's tooth appeared compromised from cavities and that Formica had not mentioned breaking the tooth while in jail. The dentist prescribed antibiotics and ibuprofen (the jail staff provided Tramadol instead) and noted "referral recommended." (ECF No. 53-9.)

Pitts states that, without consulting the dentist personally, she understood the August 9 notes to indicate no serious medical need for further treatment or extraction of tooth #32, but if Formica wanted the extraction, it should be performed by an oral surgeon. A jail clerk provided Formica with a cost estimate for such a procedure. On August 10, 2013, Formica then asked how to have his family provide money for the procedure, and the clerk told him to have the money deposited in Formica's jail account. Formica next asked on October 28, 2013, about the extraction procedure and how his family should provide the money. Shortly thereafter, his family deposited money in his jail account.

The next day, Formica filled out paperwork for a consultation with the oral surgeon that occurred on November 15, 2013. The surgeon took x-rays, diagnosed a chronic condition with

6

tooth #17 and partially missing crown on tooth #32, and opined that extraction of these teeth was indicated with IV sedation. He did not report any infection and did not prescribe antibiotics or pain medication. He also stated that for Formica's extraction to be scheduled, his PTINR (a test measuring the time the patient's blood takes to clot) must be 2 or lower. After several adjustments of Formica's blood thinner medication, his PTINR reached an acceptable level, and the oral surgeon extracted tooth #17 and tooth #32 on January 13, 2014.

### B. Tooth #5

Formica began complaining on January 30, 2014, that since the oral surgery, he had experienced a sharp pain that was getting worse, "in an area of his mouth . . . like a filling got knocked out." (ECF No. 1-2, p. 7.) The next day, he wrote a complaint stating that his tooth hurt when air hit it, and in response, was told that he was on the list to see the jail dentist. After the dentist examined Formica on February 7, 2014, and took x-rays, he reported that Formica complained of discomfort in tooth #13 and tooth #14 on the upper left, but noted no significant findings about these teeth. Formica states: "In my mind I am back to this incompetent dentist again which is now x-raying the wrong side of my mouth. But I bit my tongue." (ECF No. 72, at 7.) Formica was charged the normal $10.00 copay for the exam.

Formica complained the same day that the dentist had failed to note the tooth with the missing filling on the upper right side, allegedly so obvious that other inmates could see the hole. On February 13, 2014, Formica filed a request stating, "I want to get this problem reevaluated," but complaining that he should not be charged for a reevaluation because of the dentist's mistake. (ECF No. 53-23.) No exam was scheduled. On March 10, 2014, Formica complained: "I want a temporary filling placed in this hole. [T]he tooth really hurts now." (ECF No. 1-2, p. 8.) When Formica reported for a dental exam on March 21, 2014, a supervisor allegedly told

7

him that if he did not sign the consent form, agreeing to have the medical copay charged against his account, he was "refusing medical attention." (ECF No. 72, at 8.) Formica did not sign the form, and his appointment was cancelled.

Formica next filed a request form about his tooth on May 25, 2014, when he reported that it had cracked. He demanded to see an outside dentist, because the jail dentist had allegedly missed seeing the problem, but finally agreed to see the jail dentist for the necessary referral. The jail dentist examined Formica on June 13, 2014, took x-rays, and indicated tooth #5 on the "existing problem" line of the jail's dental notes form. Tooth #5 is near the front of the jaw on the upper left side. The dentist also reported finding a large cavity in that tooth, with possible pulpal (tissue) involvement. He reported that Formica "want[ed] to save tooth #5" and "want[ed] to be referred to outside facility." (ECF No. 53-30, at 2.) Although the dentist prescribed antibiotics and ibuprofen, his note did not mention any other treatment. Pitts advised Formica that to see the outside dentist, he would need to have $350.00 for payment in his inmate account. In July, Formica complained to Major Dyer that as a state inmate, "under the Constitution [he was] granted health care when . . . in pain" and should not need money on his account to get his tooth fixed. (ECF No. 1-2, at 13.) Dyer responded that Formica was not a state inmate and that he "was responsible for any and all medical treatments." (Id.)

On September 16, Formica asked to have the jail dentist examine his tooth for infection, stating his concern that bacteria from the tooth might affect his heart condition. At an exam on September 19, the jail dentist noted that the "existing problem," tooth #5, had gross decay and little clinical crown. (ECF No. 53-33, at 2.) The dentist's notes also reported: "P[atient] experiencing pain. Recommend referral to oral surgeon due to heart problem. Please Ext. #5." (Id.) The dentist prescribed antibiotics and ibuprofen. Pitts sent a memo to Formica, dated

8

September 22, 2014, informing him that the dentist had referred him to the oral surgeon for extraction of his tooth at an estimated cost of $462.00. She stated: "[L]et medical know if you would like to move forward with scheduling this. As you are aware . . . you will need the money on you[r] inmate account before we can schedule this." (ECF No. 49-1, at 4.) Formica wrote multiple requests in the weeks that followed, complaining that the jail was delaying treatment for a serious problem based on cost. When he wrote that his cardiologist agreed that the tooth needed to be removed, Pitts responded that the jail doctor would assess whether Formica's problem was "urgent." (ECF No. 21, at 2-5.)

On October 17, Pitts asked the jail dentist why he had referred Formica to the oral surgeon to have his tooth extracted, and the dentist said he was concerned about Formica taking blood thinners.[4] After Pitts said Formica was no longer taking such medication, the jail dentist agreed to extract the tooth and prescribed antibiotics and ibuprofen to prepare Formica for the procedure. On October 19, however, Formica reported that his tooth had fallen out. He refused to take the medications or to sign a refusal form, stating his belief that a refusal would look bad when he filed his lawsuit about his dental complaints. On October 22, Formica wrote a request, stating that remaining pieces of the tooth were "causing issues" and needed to "be addressed." (ECF No. 21, at 6.) He stated, "I am not signing anything else until I am out of pain." (Id.) Pitts advised Formica to take the medications if he wanted to see the dentist.

On October 31, the jail dentist examined Formica, noted that tooth #5 had no crown left, recommended removing the remaining root, and prescribed ibuprofen and antibiotics. When the dentist took x-rays of tooth #5 on November 14, however, he recorded his opinion that because the root of this tooth was close to a nerve, an oral surgeon should perform the extraction. Pitts

---

[4] The jail doctor discontinued Formica's blood thinner medication in March 2014 after having Formica evaluated by a heart specialist at the University of Virginia.

9

and Dyer met with the dentist on November 21 about this referral. As they understood his diagnosis, the dentist believed Formica's tooth #5 issues were preexisting and did not present a life-threatening emergency, but he was concerned that an abscess could develop and cause infection. Superintendant Aylor states that after Pitts reported this information to him, he "approved the request that day for Mr. Formica to be seen by an outside oral surgeon, but because the dental issue was not considered an immediate or serious medical need, the cost would be charged to Mr. Formica (running a negative balance in his account if he did not have the money in his account at the time)." (ECF No. 53-44, at 2.)

The oral surgeon's staff scheduled Formica's extraction procedure for January 15, 2015. On January 14, 2015, that appointment was rescheduled for security reasons, after someone from Formica's family called the surgeon's office, pretending to be a staff member for another doctor wanting to discuss details of the scheduled procedure. At an exam on January 22, 2015, the oral surgeon diagnosed a "retained abscessed root" for tooth #5, determined that extraction under general anesthesia was warranted, and scheduled the procedure for February 23, 2015.

At the end of January, however, Formica was transferred from the jail to a VDOC receiving facility. VDOC medical personnel assessed Formica on February 11, 2015, and allegedly informed him that because of overcrowding due to a recent prison closure, Formica would not undergo surgery on his tooth until he reached his final facility assignment. He reached Pocahontas Correctional Center at the end of March. According to Formica, this institution had a backlog of dental appointments, postponing his extraction procedure until the end of July 2015.

III. Discussion

"Deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment."[5] Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97, 105 (1976)). To prevail on a deliberate-indifference claim, Formica must present evidence on which he could persuade the fact finder of "two components, objective and subjective.[6]

Objectively, the inmate's medical condition must be "serious" in the sense that it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. A serious medical need may be one that "absent treatment, could result in further significant injury or the unnecessary and wanton infliction of pain"; one that "a reasonable doctor or patient would find important and worthy of comment or treatment"; one that "significantly (and adversely) affect[s the plaintiff's] daily activities"; or one that "involve[s] the existence of chronic and substantial pain." Scott v. Clarke, 64 F. Supp. 3d 813, 822 (W.D. Va. 2014) (citations omitted). "Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection,"

---

[5] As the magistrate judge found in the report, whether Formica was a pretrial detainee or a convicted prisoner at the times his § 1983 claims arose, the legal "standard in either case is the same—that is, whether a government official has been 'deliberately indifference to any [of his] serious medical needs.'" Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001) (quoting Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir. 1990)); Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992)) ("Pretrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainee's rights to due process when they are deliberately indifferent to serious medical needs.") (quoting Gordon v. Kidd, 971 F.2d 1087, 1094 (4th Cir. 1992)).

[6] Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Tolan v. Cotton, __ U.S. __, 134 S. Ct. 1861, 1866 (2014) (per curiam). When deciding a summary judgment motion, the court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the nonmoving party's favor given the record as a whole. See Tolan, 134 S. Ct. at 1866. The court does not weigh evidence, consider credibility, or resolve disputed issues—it decides only whether the record reveals a genuine dispute over material facts. Id. at 1866. Facts are material when they "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute exists if "a reasonable jury could return a verdict in favor of the nonmoving party." Kolon Indus., Inc. v. E.I. DuPont de Nemours & Co., 748 F.3d 160, 173 (4th Cir. 2014) (citing Anderson, 477 U.S. at 248).

11

Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010), and because it "is a degenerative condition [that] left untreated indefinitely, . . . is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction." Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000).

Subjectively, "officials evince deliberate indifference by acting intentionally to delay or deny the prisoner access to adequate medical care or by ignoring an inmate's known serious medical needs." Sharpe v. South Carolina Dept. of Corrections, 621 F. App'x 732, 733 (4th Cir. 2015) (citations omitted). To prove deliberate indifference, Formica must show that the defendant prison official had "actual . . . knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's [own] action or inaction." Jackson, 775 F.3d at 178 (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). This component requires proof of intent beyond mere negligence, errors in judgment, inadvertent oversights, or disagreements about the prisoner's treatment plan. Id.

An inmate has no constitutional right to free medical care, however. Boblett v. Angelone, 942 F. Supp. 251, 254 (W.D. Va. 1996), aff'd, 121 F.3d 697 (4th Cir. 1997). The allocation of such expenses is a matter of state law.[7] Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 245 (1983) ("Nothing we say here affects any right a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided to him.")). Accordingly, charging an inmate a reasonable copay for requested medical care does not violate the Constitution, where officials do not deny him medically necessary care based on his lack of funds. See, e.g., Poole v. Isaacs, 703 F.3d 1024, 1027 (7th Cir. 2012) (citing other cases approving medical copay procedures for inmates).

---

[7] Virginia law expressly authorizes jail officials to implement a medical treatment program that requires inmates to "pay towards a portion of the costs" of the medical care provided to them. See Va. Code Ann. § 53.1-133.01.

On the other hand, jail medical policies must respect Formica's right to refuse medical treatment and his property interest in his inmate trust account monies. See, e.g., Simms v. Bair, 249 Fed. Appx. 975, 976 (4th Cir. 2007) ("'[t]he right to refuse medical treatment has been specifically recognized as a subject of constitutional protection' [and even] survives criminal conviction and incarceration"); Johnson v. Dep't of Pub. Safety & Corr. Servs., 885 F. Supp. 817, 819-21 (D. Md. 1995) (holding that jail procedure requiring inmate's signed consent to charge medical copay against his trust account for requested care comported with due process). Finally, disputes over alleged misapplication of a jail policy's exemptions to copayment charges for some types of care, such as follow up visits or chronic conditions, are state law matters not cognizable under § 1983. Poole, 703 F.3d at 1027.

### A. Tooth #32

The court finds no material dispute that anyone at the jail ignored Formica's dental complaints about tooth #32 or denied him access to dental treatment. From the day of the wisdom tooth injury, he received pain medication, saw the dentist in less than two weeks, received stronger pain medication and antibiotics, had a follow-up dental exam two weeks later, received more medication, and was provided a cost estimate to have oral surgery because the condition was preexisting and not serious. Once Formica had the money in his account, he saw the oral surgeon within about two weeks and then had medication adjustments and blood work to lower his PT/INR for the surgery, performed on January 13, 2014.

Clearly, Formica was not denied dental treatment of tooth #32. Rather, his deliberate indifference claim turns on the cause and effects of the delays in extracting this problem tooth. "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Sharpe, 621 F. App'x 732 at 734 (quoting

13

McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)); see also Webb v. Hamidullah, 281 F. App'x 159, 166-67 (4th Cir. 2008) (per curiam) (finding that intentional delay in providing inmate with medically necessary hernia surgery can amount to deliberate indifference, where doctor said surgery was required and inmate alleged ongoing, severe pain).

In less than two weeks after tooth #32 started causing Formica problems, the jail dentist ground off the irritating edges and prescribed pain medication. After that exam, Formica did not file reports that the tooth caused any further tongue soreness or substantial pain. The dentist's initial diagnosis and treatment plan in July 2013 (gross decay and extraction) were virtually the same as the surgeon's assessment in November 2013.[8] Neither the dentist nor the surgeon reported any infection, and the surgeon did not prescribe any pain medication at the November consultation. Six weeks later—a delay attributable not to the defendants, but to lowering Formica's PTINR—the surgeon removed the tooth. Based on this evidence, the magistrate judge found that Formica has not shown that the delay of the wisdom tooth surgery itself caused additional, significant harm.

Formica now contends that he suffered extreme pain throughout the period of the delay. The documentation does not support this contention. No medical record indicates that the root of the tooth was exposed, as Formica now alleges. The record includes some request forms mentioning tooth-related pain, but no "frequent complaints of severe pain" or other substantial harm, Webb, 281 F. App'x at 167, and Formica does not allege that he was denied pain medication at any time he requested it during the waiting period. Even if Formica's own trial testimony might convince a fact finder that the delay allowed him to suffer ongoing, severe pain from the broken tooth, he does not present evidence showing that Pitts, Dyer, or Aylor had

---

[8] Formica alleges that during the exams in July and August 2013, the dentist did not mention finding gross decay in tooth #32, as reported in the dentist's notes. Formica does not support his own hearsay account of these exams with an affidavit from the dentist or other evidence admissible at trial.

14

"actual knowledge" between July 9 and November 15, 2013, that he was suffering any such substantial harm from the delay. Jackson, 775 F.3d at 178. Without evidence on these critical elements of his deliberate indifference claim, Formica cannot survive summary judgment as to his claims against any of the defendants. The court will grant the defendants' motion accordingly.

B. Tooth #5

The court also concludes that defendants did not ignore or deny Formica treatment for his problems with tooth #5 that first arose in January 2014. He had a dental exam on February 7, 2014, including an x-ray and medication, and would have had another exam on March 21, but he refused it. After two months with no dental complaints, Formica asked for and received a dental exam on June 13, including x-rays and medication. When Formica advised the dentist that he wanted an outside dental facility to save his tooth, Pitts promptly provided him a cost estimate for the outside exam. On September 19, three days after Formica's next request for dental care, the dentist provided medication and recommended extraction by an oral surgeon. Again, Pitts promptly provided Formica a cost estimate for the procedure. The jail dentist then agreed to extract the tooth and prescribed preparatory medications, which Formica refused. The dentist did two additional exams on October 31 and November 14, providing x-rays and medications. By November 21, because of the dentist's concerns about the risk of abscess and complications from Formica's other health problems, the jail agreed to schedule the recommended extraction by an oral surgeon without requiring prepayment. The jail scheduled, and rescheduled, and transported Formica to the oral surgeon for a consultation on January 22, 2015, and scheduled a February 23, 2015, extraction under general anesthesia that did not occur only because Formica had left the jail by then.

15

Formica contends that defendants, particularly Pitts, delayed scheduling him for evaluation and treatment by the oral surgeon, based on his failure to prepay the costs, thus allowing tooth #5 to decay further, break, fall out, and threaten complications of his heart condition. Formica fails to forecast evidence on which a reasonable fact finder could reasonably rule in his favor on necessary elements of this theory, however.

First, while Formica self-diagnosed the problem with tooth #5 as a dislodged filing, he himself took actions that initially delayed treatment to prevent further deterioration. At his first dental exam on February 7, Formica admits that he failed to tell the dentist that he was not x-raying the affected tooth. Formica delayed treatment again on March 21, when officials offered the dental exam he had requested, and he refused to consent to the required copay charge.[9] While he enjoys a right to refuse treatment and save his money, he cannot blame any defendant for the delay resulting from his decision that day. Thereafter, Formica further delayed care—by waiting until late May 2014, after the tooth had cracked, to ask for dental attention again, and by insisting to be sent to an outside dentist, despite knowing jail policy required the jail dentist to make any such referrals.

At the June 13 exam, the jail dentist recorded his diagnosis of a large cavity and Formica's desire to see an outside dentist to save the tooth. Formica alleges that the dentist told him that "he [could] not fix the problem," that he "will refer [Formica] to the oral surgeon"; Formica insists that Pitts must have heard these statements from her desk nearby. (ECF No. 72, at 9.) He makes similar allegations about the September 19 exam. After that exam, the jail

---

[9] Formica contends that jail officials violated the copayment policy by deeming tooth #5 to be a pre-existing condition or by refusing to classify the March 21, 2014, dental exam as a follow up visit not subject to a copayment. These alleged policy violations are, at most, state law issues not cognizable under § 1983, Poole, 703 F.3d at 1027, and the court declines to exercise supplemental jurisdiction over any such matter. See 28 U.S.C. § 1367(c)(3).

16

dentist noted his recommendation for referral to the oral surgeon because of Formica's heart problem. His clinical assessment also reported Formica's complaint of pain, but included a prescription for pain medication. According to Formica, the dentist said that he had told the jail to "send [Formica] out." (Id. at 10-11.) Formica's hearsay versions of his conversations with the dentist do not match the dentist's notes on which the defendant jail officials reasonably relied in making scheduling decisions. Formica offers no affidavit or other evidence admissible at trial, indicating that the dentist found on June 13 or September 19 that tooth #5 presented a serious medical need for emergency referral to an oral surgeon or that the dentist so advised Pitts. Likewise, Formica does not allege or submit documentation of making complaints of substantial pain from tooth #5 during this period to alert Pitts or other defendants of any urgent need for the referral, based on Formica's level of discomfort.

After the June 13 and September 19 exams, based on her reasonable interpretation of the dentist's note as a referral for an essentially elective procedure, Pitts obtained and gave Formica the cost for his desired oral surgery consult or procedure; then, she waited to schedule an appointment whenever he had obtained the money. Formica has failed to marshal evidence that Pitts knew of a substantial risk of serious harm to Formica arising from these delays in taking him to the oral surgeon.

From mid-September to mid-October 2014, Formica filed repeated requests claiming dire health consequences if his tooth was not fixed and blaming the jail for refusing him an outside dental appointment in February. These requests did not state that Formica was in substantial pain, that he could not prepay the costs Pitts had estimated for him, or that he would not agree to charge the procedure against his account. On October 17, Pitts tried to aid Formica in his desire for the extraction procedure by asking the jail dentist why he could not extract tooth #5 after all.

17

Then, after most of the tooth fell out, Formica himself continued delaying his own treatment by refusing the pre-appointment antibiotics and insisting he did not have to sign paperwork to receive treatment.

From the time of Formica's next dental exam on November 14, 2014, the record evidence does not support any finding of unreasonable delay. The dentist identified some risk of harm if the remaining pieces of tooth #5 were not extracted by an oral surgeon, based on the root's nearness to a nerve and the possibility of infection. No evidence indicates that Pitts responded unreasonably to these risks, given the dentist's concurrent assessment that the tooth's condition was not a life-threatening emergency. On November 21, Pitts and Dyer briefed Aylor, who approved scheduling Formica for an appointment with the oral surgeon without requiring Formica to have money on hand to cover the costs. The surgeon's office scheduled that appointment for January 15, 2015, and then rescheduled it for January 22, after Formica's family caused security concerns. The surgeon's office also determined the date for the surgery itself, and in the meantime, the VDOC came for Formica.

In summation, delays that occurred between the initial development of the problem with tooth #5 and its extraction must be attributed to four factors: (1) Formica's own actions and blanket objection that the jail should cover all costs for repair of the tooth; (2) defendants' reasonable conclusion from the dental notes that tooth #5 did not require emergency treatment; (3) scheduling issues in the oral surgeon's practice; and (4) Formica's transfer to the VDOC and VDOC officials' postponement of the procedure. Careful review of the medical records the parties have provided simply does not reflect any clinical assessment of Formica's condition as a serious medical need for immediate oral surgery at any point between January and November 2014. Thus, the court finds no genuine dispute that defendants knew during this time that their

18

delays in scheduling oral surgeon appointments until Formica had the money for payment placed him at any risk of serious harm. Once the dentist notified them in November 2014, that further delay of the extraction might present some health risks, defendants took reasonable steps to arrange for the procedure without proof that Formica could pay. Again, since jail officials did not withhold necessary treatment of a serious medical condition for nonmedical reasons, they could lawfully charge Formica's account for the costs of that treatment.

Finally, the court finds no genuine dispute that the degree of delay caused by defendants "exacerbated the injury or unnecessarily prolonged an inmate's pain." Sharpe, 621 F. App'x 732 at 734. On the contrary, the record reflects that in his written requests to defendants, Formica expressed far more concern about who should pay for fixing tooth #5 than about the specific nature of any pain the delay was causing him. Moreover, when VDOC medical staff evaluated Formica's dental condition in January 2015, they apparently found no factual basis for an emergency extraction procedure and waited seven months to perform that procedure.

III.

For the stated reasons, the court finds no genuine issue of material fact on which Formica could persuade a fact finder that the defendants acted with deliberate indifference to any serious medical need for a different course of dental treatment than he received. Accordingly the court concludes that defendants are entitled to summary judgment. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for defendants. An appropriate order will issue this day.

ENTER: This 26th day of August, 2016.

/s/ Glen Conrad
Chief United States District Judge

19

Case 7:14-cv-00449-GEC-JCH Document 76 Filed 08/26/16 Page 19 of 19 Pageid#: 675